Filed 11/10/22  In re J.V. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.V. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078618 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J288234, J288235, J288236 & J288237) |
| v. | OPINION |
| V.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, Interim County Counsel, and Pamela J. Walls, Deputy County Counsel, for Plaintiff and Respondent.

1

<u>INTRODUCTION</u>

Defendant and appellant V.V. (father) appeals from the juvenile court's summary denials of two Welfare and Institutions Code[1] section 388 petitions regarding his children, J.V., Viv.V., Vio.V., and Vin.V. (the children). We affirm.

<u>PROCEDURAL BACKGROUND</u>

On February 19, 2021, the San Bernardino County Children and Family Services (CFS) filed petitions alleging that the children came within the provisions of section 300, subdivisions (a) (serious physical harm), (b) (failure to protect, (g) (no provision for support), and (j) (abuse of sibling). At the time, J.V. was approximately three weeks old, Viv.V. was 14 months old, Vio.V was two years old, and Vin.V. was three years old. The petitions included allegations that while in the custody of mother, J.G. (mother),[2] Viv.V. sustained bruising under her eye and a gash to the back of her head, which were consistent with physical abuse; that mother had a history of substance abuse; that father's whereabouts were unknown; and that mother's parental rights as to three of the children's half siblings were previously terminated.

The social worker filed a detention report recommending that the children be removed from the custody of mother and father (the parents). The social worker reported that CFS received a referral on February 16, 2021, alleging general neglect and physical

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] Mother is not a party to this appeal.

2

abuse of Viv.V., general neglect and sexual abuse of Vio.V., and general neglect of J.V. and Vin.V. It was reported that a relative observed Viv.V. with an open wound on the back of her head, a "busted lip," and bruising on both of her eyes. It was also reported that she had an infection in her mouth and could barely eat. The social worker made several attempts to locate mother, father, and the children but was unsuccessful. Nonetheless, due to Viv.V.'s injuries, CFS decided to proceed with the petition anyway. A judge signed a detention warrant on February 17, 2021, ordering the children to be detained from the parents' custody.

The social worker reported that mother had a total of seven children, three of whom (the children's half siblings) had previously been removed from her custody due to concerns of drug use, a transient lifestyle, caretaker absence, general neglect, and physical abuse. Mother's parental rights to those three children were terminated.

The court held a detention hearing on February 22, 2021, and ordered the children removed from the parents' care upon apprehension.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on March 10, 2021, recommending the children be placed in out-of-home care, with no reunification services provided to the parents. The whereabouts of the children and the parents were still unknown at that time. The social worker stated that mother fell under the provisions of section 361.5, subdivision (b)(10), (b)(11), and (b)(13), as she failed to reunify with the half-siblings of the children and had failed to ameliorate the issues that led to their removal.

3

The children were located at mother's residence on April 7, 2021, and placed into CFS custody; thus, the bench warrant was recalled. The condition of the residence was found to be hazardous to the children's safety, and mother was arrested on child cruelty charges. The police observed the home to have no running water, human feces on the floor, a lack of ventilation and/or any type of air conditioning, various electrical cords easily within reach of the children, and rotten food and spoiled milk sitting out throughout the home.

The police located and arrested father on April 12, 2021, on child abuse charges, and he was released on April 16, 2021. Father was interviewed and stated he was the biological father to all the children except Viv.V.; nonetheless, he held out all the children as his own. Father reported he did not reside with mother, but was at her residence daily and had daily contact with the children. He admitted he observed Viv.V.'s injuries that were noted in the detention report and stated the injuries occurred while she was in mother's care. He said mother told him Viv.V. fell out of a high chair. Father denied ever observing any bruises on the other children, despite his admission to last seeing them three days prior to when they were located and detained.

The court held a jurisdiction/disposition hearing on May 3, 2021. Father was present with counsel, but mother was not since she was in custody. The court asked him about paternity, and he said he believed he was the father of J.V., Vio.V., and Vin.V. but not Viv.V. He had never been married to mother, but he lived with her from 2017-2019. He said that after he stopped living with them, he still visited the children once every other week, or sometimes twice a week. The court ordered that father be assessed for

4

services and be given supervised visitation. It also ordered predisposition services for him.

*Amended Petitions*

On June 7, 2021, the social worker filed amended section 300 petitions to reword some of the allegations against mother and to add allegations against father under subdivisions (a) (serious physical harm), (b) (failure to protect), and (j) (abuse of sibling). The amended petitions included allegations that while in father's custody, Viv.V. sustained injuries and bruises noted to be in various stages of healing, he had a domestic violence history, and he failed to provide safe living conditions for the children. The amended petitions deleted the allegation under section 300, subdivision (g), that father's whereabouts were unknown.

The social worker filed an addendum report on June 8, 2021, regarding the amended allegations and recommending no reunification services for either parent. Mother confirmed that father did not live with her and the children but said he frequently slept at her home and had frequent contact with the children. The social worker reported that father was referred to parenting education classes and domestic violence classes on May 27, 2021; however, the CFS service coordinator reported that various attempts were made to contact him to schedule services, but he did not return any of the calls.

The social worker also reported that when the children were located on April 7, 2021, Viv.V. was observed to have injuries that were consistent with physical abuse. A forensic medical exam was conducted on April 8, 2021, plus a subsequent evaluation at Loma Linda University Children's Hospital. The Loma Linda doctor reported that

5

Viv.V. had oral trauma that was indicative of blunt force trauma to the mouth, had multiple holes on the back of her ears that could be bite marks, and had linear abrasions on her neck that were possibly an indication of strangulation or suffocation. The doctor stated that the injuries were most consistent with inflicted trauma, and they occurred from multiple acts of physical abuse, as evidenced by the various stages of healing of her bruises and injuries. He also stated that each act resulted in significant bleeding and/or bruising.

The social worker reported that although the evidence indicated that Viv.V. sustained injuries consistent with physical abuse while in the parents' care, the parents refused to acknowledge most of her injuries. The social worker further reported that on May 11, 2021, Vin.V. was interviewed by the Children's Assessment Center. He stated, "Mommy smack my butt, my butt hurt, I crying," indicating she used her hand. He also said he was afraid of her, and that "mommy give Vivi owies." Vin.V. further reported that "Dada (Daddy) always hit me."

The court held a hearing on June 8, 2021, and both parents appeared. Mother confirmed that father lived with her and the children from 2017-2019, and that once he stopped living with them, he still visited them consistently. The court noted that the social worker was recommending no reunification services for mother under section 361.5, subdivision (b)(5), (b)(6), (b)(10), (b)(11), and (b)(13), and for father under section 361.5, subdivision (b)(5) and (b)(6). The court set a contested jurisdiction hearing for June 29, 2021, and a contested disposition hearing for August 10, 2021.

6

*Additional Information*

In an additional information to the court memorandum (CFS 6.7), the social worker reported that father did a paternity test with regard to Viv.V., and the results indicated he was 99.99% her father.

In a CFS 6.7 report filed on June 29, 2021, the social worker reported concerns regarding the children's visits with father. The children were fearful of him and reluctant to interact with him. The social worker reported the children have cried, screamed, and clung to CFS staff upon entering the visitation room with father. The caregivers for J.V. and Viv.V. have also reported that J.V. and Viv.V. appeared highly distressed and their behavior regressed following visits.

*Jurisdiction/Disposition Hearings*

The court held a contested jurisdiction hearing on June 29, 2021. The court noted the evidence of Viv.V.'s extensive injuries and stated: "[T]he unexplained injuries don't preclude either parent as being responsible for them. It's clear that each parent would have been aware of them due to the ongoing nature and the photographic detail and each had a duty to protect her from that abuse." The court particularly noted that father indicated he had almost daily contact with the children and did not provide any plausible explanation for Viv.V.'s serious injuries. It also noted Vin.V.'s statement that his daddy always hit him. The court sustained the amended petitions, finding that Viv.V. came within section 300, subdivisions (a), (b), (e), and (j), and Vio.V., J.V., and Vin.V. came within section 300, subdivisions (a), (b), and (j).

7

The court held a contested disposition hearing on August 10, 2021, and found father to be the presumed father of the children. It then bypassed the parents' reunification services pursuant to section 361.5, subdivision (b)(5), (b)(6), and (b)(7),[3] declared them dependents of the court, and removed them from the parents' custody. The court ordered no visitation for mother and supervised visitation for father, and it set a section 366.26 hearing.

The social worker subsequently asked for the 366.26 to be continued in order to allow enough time for J.V. and Viv.V. to move into the same placement as Vin.V. and Vio.V. The court continued the section 366.26 hearing to April 7, 2022.

*First Section 388 Petition*

On December 13, 2021, father filed a section 388 petition requesting the court to order that he be granted reunification services. As to changed circumstances, he alleged that he completed 16 weeks of parenting, 12 weeks of anger management, 25 hours of Narcotics Anonymous (NA) meetings, eight sessions of counseling, and "plenty clean drug test [*sic*]" As to best interests, father stated it would be best for J.V.[4] to be with him because he had "learned how to cope with [his] kids and how to be a better father and how to protect [his] children." In support of his petition, father attached a letter from Youths Hope Licensed Clinical Social Worker Inc. (Youths Hope), verifying that he self-

---

[3] The court additionally denied mother services pursuant to section 361.5, subdivision (b)(10) and (b)(11).

[4] Father named J.V. in the petition, but not the other children.

8

enrolled in individual therapy on August 16, 2021, completed eight sessions, and "benefitted from therapy."[5]

The social worker filed an opposition to father's petition, recommending that the petition be denied. The social worker reported that the children were placed together in the home of Mr. and Mrs. G., who were available, willing, and eligible to adopt them. The children were provided with love and structure, and were observed to be stable and thriving in the home. The social worker reported that father had maintained monthly visitation with the children and was observed to be attentive to their needs. However, the social worker reported that the children "identify the father as a friendly visitor and not as a parent[]." She noted that they did not appear affected when visits ended, and they were observed to become excited to see the caregivers and would run to hug them. The social worker recommended that the section 388 petition be denied, as the children had a stable living environment, and they identified their current caregivers as their parents.

On February 17, 2022, the court held a hearing to determine if there was sufficient evidence to warrant an evidentiary hearing on the section 388 petition. Father's counsel essentially repeated the allegations in the petition, noted that father had maintained consistent visitation, and stated that father filed the petition because he wanted to be there for his children and see them grow up. Counsel noted father had taken classes on his own initiative and was now asking the court to grant him reunification services.

---

[5] The letter does not indicate the title or position of the author of the letter.

Counsel for the children argued that father continued to deny responsibility for the court's true findings. She pointed out the court specifically found that both parents were responsible for the serious injuries, and there were a number of serious injuries that would be impossible not to notice. She noted the therapy progress report did not indicate that the therapist had any of that information or that father had addressed any of those concerns. Counsel further noted that visits were only once a month, and father admitted he did not have much of a relationship with the children. County counsel joined in the arguments of the children's counsel and argued that father had not met his burden of showing changed circumstances or best interests.

The court stated that it considered the reports and listened to arguments, and it did not believe there was sufficient evidence on either prong to set a hearing. Thus, the court denied the petition. It then noted that the trial court did find the injuries were sustained in the care of both parents, that father continued to deny such, and that he continued to deny he saw any risk when it was clear the child had injuries over a period of time that were numerous and visible. The court observed father's complete lack of acknowledgment regarding the true findings of the case (i.e., that Viv.V. sustained serious injuries and bruises while in his care, and that he failed to provide safe living conditions). The court additionally noted its concerns about the therapist's report, which did not address the physical safety of the children, and it was not clear how many sessions father had completed since it looked like the number of sessions "was changed in pen to a different

10

number." The court also stated there was insufficient evidence to show best interests. Father filed a notice of appeal on March 4, 2022, in propria persona.[6]

*Second Section 388 Petition and Section 366.26*

Father filed a second section 388 petition on March 25, 2022, again requesting reunification services. For changed circumstances, father alleged that he completed 13 sessions of individual counseling, and that he had a letter from mother admitting the allegations.[7] As to best interests, he repeated the same allegations from the first section 388 petition. In support of the second petition, father attached another letter from Youths Hope, which stated it was written at father's request. The letter indicated father had completed 13 sessions of individual therapy. It further stated that father had "significantly processed and addressed issues related to abuse and neglect of his daughter," addressed "issues related to protection and safety of his children," "denied personal involvement in physical abuse of his children," and significantly benefitted from therapy.

---

[6] We note the notice of appeal does not specify that father was appealing the denial of the section 388 petition. He checked the boxes on the form indicating he was appealing the removal order and the termination of parental rights. However, we observe that he also wrote "2-17-2022" and "Reunification" on the form. Because the court denied his section 388 petition requesting reunification services on February 17, 2022, we will liberally construe the notice of appeal to include the denial of his petition. (See *In re Joshua S.* (2007) 41 Cal.4th 261, 272 [A notice of appeal shall be " 'liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' "].)

[7] Father did not attach a letter from mother to his section 388 petition.

11

The social worker filed an addendum report on March 28, 2022, recommending that parental rights be terminated and adoption be implemented as the permanent plan. The social worker reported that Vin.V. and Vio.V. had been placed in the home of Mr. and Mrs. G. since May 17, 2021, and J.V. and Viv.V. joined them in the placement on December 6, 2021, and that the children were likely to be adopted. She stated the children and caregivers appeared to share a mutual bond and attachment, and Mr. and Mrs. G. had expressed a strong desire to adopt them. Mr. and Mrs. G. were meeting their needs and were committed to raising them to adulthood.

The court summarily denied father's second section 388 petition on April 6, 2022, since it did not show a change of circumstance or best interests of the children. The court specifically stated that it had sustained significant allegations against both parents regarding serious injuries from physical abuse. It also noted that it found father either lived in the home or had frequent contact with the children, such that they were in his care. The court stated that father's denial of these facts did not show a change of circumstance and his blaming of mother showed a lack of progress in therapy.

On April 7, 2022, the court held a contested section 366.26 hearing. At the outset, the court advised father that his second section 388 was summarily denied. The court expressed its continued concern about the lack of acknowledgment of the sustained true findings regarding physical abuse of the children and about the best interests of the children. The court then continued the section 366.26 matter to June 28, 2022.

Father filed a notice of appeal on April 27, 2022, with regard to the order on the section 388 petition.

12

DISCUSSION

The Court Properly Denied Father's Section 388 Petitions

Father argues that the court erred in summarily denying his two section 388 petitions. He claims he should have been granted an evidentiary hearing since he made the requisite prima facie showing that his circumstances had changed, and that offering him reunification services would be in the children's best interest.[8] We conclude the court properly denied father's petitions.

A. *The Court Did Not Abuse its Discretion*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).) "Thus, the parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests." (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157 (*G.B.*).) "A parent need only make a prima facie showing of these elements to trigger the right to a hearing on a section 388 petition and the petition should be liberally construed in favor of granting a hearing to consider the parent's request. [Citation.] [¶] However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change

---

[8] We note that father's petitions only name J.V., but not the other children. However, his notices of appeal name all four children. Since father filed the section 388 petitions in propria persona, we will assume that he intended to name all four children and will address the petitions as if he did.

13

would promote the best interests of the child, the court need not order a hearing on the petition." (*Zachary G.*, at p. 806.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*Ibid.*) "While the petition must be liberally construed in favor of its sufficiency [citation], the allegations must nonetheless describe specifically how the petition will advance the child's best interests." (*G.B.*, *supra*, 227 Cal.App.4th at p. 1157.) More than general conclusory allegations are required to make this showing, even when the petition is liberally construed. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593 (*Edward H.*).) "We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

Father's section 388 petitions sought the provision of reunification services. The juvenile court did not abuse its discretion in summarily denying the petitions, as father was unable to demonstrate changed circumstances or that a changed order was in the best interests of the children. As to changed circumstances, the first petition alleged that father completed several weeks of parenting classes and anger management, that he participated in NA meetings and counseling sessions, and he drug tested clean. He attached a letter from Youths Hope to verify his participation in the counseling sessions. However, the letter did not indicate that father had benefitted from any of these classes or counseling sessions. This is particularly concerning since although the evidence indicated that Viv.V. sustained serious and visible injuries consistent with physical abuse while in his care, father had no plausible explanation for the injuries and did not take any

14

responsibility for protecting the children. Moreover, the court originally bypassed father's services pursuant to section 361.5, subdivision (b)(5), (b)(6), and (b)(7).[9] Thus, father failed to show changed circumstances. Additionally, despite the therapy sessions and classes completed, father still failed to acknowledge that Viv.V. suffered severe physical abuse while in his care and sustained serious injuries, that the other children were at risk of similar abuse, and that he failed to provide safe living conditions for the children. Thus, the counseling attended by father did not provide a sufficient evidentiary basis to demonstrate a change of circumstances.

Furthermore, for best interests, father's first petition merely asserted that it would be best for the children to be with him because he had "learned how to cope with [his] kids and how to be a better father and how to protect [his] children." These general conclusory allegations were simply inadequate. (*Edward H.*, *supra*, 43 Cal.App.4th at p. 593.) The petition did not allege *how* the proposed change would promote the best interests of the children. (*G.B.*, *supra*, 227 Cal.App.4th at p. 1157.) Accordingly, there was no need for the court to order a hearing on the first petition. (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.)

---

[9] Section 361.5 provides that reunification services need not be provided where "the child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent" (subd. (b)(5)), where the child has been adjudicated a dependent as a result of the infliction of severe physical harm to the child by a parent, and "the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent" (subd. (b)(6)), and the parent is not receiving reunification services for the child's sibling pursuant to paragraph (5) or (6) (subd. (b)(7)).

15

Similarly, there was no need for a hearing on the second section 388 petition. For changed circumstances, father alleged that he completed a few more counseling sessions than he alleged in the first petition, and he attached another letter from Youths Hope, stating that he had addressed issues related to the abuse and neglect of his daughter and the protection and safety of his children, and that he had significantly benefitted from therapy. However, we note the letter specifically stated that it was written at father's request, indicating he asked Youths Hope to revise the letter submitted with his first petition, perhaps in light of the court's expressed concerns. Most troubling, however, is that the revised letter expressly stated that father "denied personal involvement in physical abuse of his children." In other words, he apparently still refused to acknowledge the court's true findings in this case, even despite evidence that Vin.V. reported father "always hit [him]" and the clearly visible injuries on Viv.V. of which he should have been aware. Furthermore, as to best interests, father simply repeated the same conclusory allegations from the first section 388 petition, which were inadequate.

Even on appeal, father fails to show it was in the children's best interests to provide him with reunification services. He asserts that the social worker confirmed the services he completed, that he was working full time, and that he was living with family. He adds that he visited the children regularly and had a positive relationship with them, noting that, although they were once fearful of him, he was now having appropriate visits with them. Father also points out that, in its ruling on the petitions, the court "focused on the original finding that [he] either lived in the home or had frequent contact with the children and the allegations were against both parents." He claims that if the court had

16

set the petition for hearing, he could have "introduced evidence that put the original findings in doubt." In making this claim, he refers to "a written letter from [m]other taking responsibility for the allegations in the [section 300] petition." Father appears to be asserting that a hearing was warranted since he had evidence that mother was solely responsible for Viv.V.'s injuries and the protection of the other children. However, this claim only confirms the court's concern that father has refused to acknowledge the court's true findings, despite already participating in services on his own. In other words, father is not likely to benefit from the requested services if he continues to deny responsibility for Viv.V.'s abuse and substantial injuries, for the unsafe living conditions, and for the protection of the children.

We conclude the court did not abuse its discretion in denying father a hearing on either of his section 388 petitions. The petitions did not demonstrate a change of circumstances, nor did they allege any facts to support the conclusion that the children's best interests would be served by granting father reunification services.

<u>DISPOSITION</u>

The orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.

We concur:

RAMIREZ _____

P. J.

McKINSTER _____

J.

17